**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

MEDALLIA INC.,

     Plaintiff,

v.                             Case No. 3:22-cv-1243-MMH-LLL

ECHOSPAN, INC.,

     Defendant.

_____

## O R D E R

**THIS CAUSE** is before the Court on Defendant EchoSpan, Inc.'s Motion to Dismiss for Improper Venue or, in the Alternative, Transfer to the United States District Court for the Northern District of Georgia (Doc. 10; Motion), filed on January 11, 2023. As an attachment to its Motion, EchoSpan submits a declaration from Joe Vance. <u>See</u> Declaration of Joe Vance in Support of EchoSpan, Inc.'s Motion to Dismiss for Improper Venue or, in the Alternative, Transfer to the United States District Court for the Northern District of Georgia (Doc. 10-1; Vance Declaration). Plaintiff Medallia Inc. filed its response to the Motion on February 15, 2023.[1] <u>See generally</u> Plaintiff Medallia Inc.'s Opposition to Defendant's Motion to Dismiss or, in the Alternative, Transfer

_____

[1] Medallia filed an unopposed motion for an extension of time to file the Response, which the Magistrate Judge granted on February 1, 2023. <u>See</u> Endorsed Order (Doc. 19). Accordingly, Medallia's Response was timely filed.

(Doc. 20; Response).    Medallia attaches a declaration from Daniel B. Ravicher, Esq.    See Declaration of Daniel B. Ravicher, Esq., in Support of Plaintiff Medallia Inc.'s Opposition to Defendant's Motion to Dismiss or, in the Alternative, Transfer (Doc. 20-1; Ravicher Declaration).    Accordingly, this matter is ripe for review.

## I.    Background[2]

In this case, Medallia asserts a single claim of patent infringement against its competitor, EchoSpan.    See Complaint ¶¶ 1, 12, 17.    Specifically, Medallia asserts its rights in U.S. Patent No. 10,963,639, which relates to computer systems for "analyzing the sentiment of text provided in feedback, which involves determining whether the text in feedback expresses positive, negative, neutral, or mixed sentiments."    Id. ¶¶ 9–10.    Medallia contends that some of EchoSpan's products, including its "360-degree feedback platform," infringe this patent.    See id. ¶¶ 1, 12.

Although EchoSpan is a Georgia corporation, see id. ¶ 3, its "remote work policy" allows employees to work from "anywhere in the United States."    Id. ¶ 10.    Some EchoSpan employees reside in Georgia.    See Vance Declaration ¶ 11.    But three employees—including EchoSpan's president—reside in the

---

[2] The facts recited here are drawn from Medallia's Complaint (Doc. 1; Complaint), filed on November 11, 2022, (as supplemented with facts from the parties' filings to provide clarity where appropriate and uncontested), and may well differ from those that ultimately can be proved.

Middle District of Florida.[3]   <u>See</u> <u>id.</u> ¶ 12.   Because these employees live and work in this district, Medallia asserts that the Middle District of Florida is a proper venue for the case.   <u>See</u> Complaint ¶ 6; Response at 1–2.   EchoSpan disputes this contention, arguing that the cited facts are insufficient to establish venue under the relevant statute.   <u>See generally</u> Motion.   As such, EchoSpan moves to dismiss the case pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure (Rule(s)) or, in the alternative, to transfer it to the United States District Court for the Northern District of Georgia pursuant to 28 U.S.C. § 1406(a).   <u>See</u> <u>id.</u> at 18–19.

## II.    Legal Standard

When a defendant brings a motion to dismiss for improper venue under Rule 12(b)(3), "the plaintiff has the burden of showing that venue in that forum is proper."   <u>Prou v. Giarla</u>, 62 F. Supp. 3d 1365, 1379 (S.D. Fla. 2014) (internal quotation marks omitted).   Although in determining whether a plaintiff has

---

[3] Medallia asserts that the three employees who live in the Middle District of Florida constitute "half" of the EchoSpan workforce.   Response at 1.   Neither party's evidence, however, definitively establishes the total number of EchoSpan employees.   The Ravicher Declaration includes screenshots from LinkedIn that mention six employees, but it is unclear whether this is the actual number of employees or merely the number of employees with LinkedIn profiles.   <u>See</u> Ravicher Declaration at 6, 9.   And while EchoSpan's website has noted that "half [of its employees] are in Florida," this statement comes from a March 2020 article that may be outdated.   <u>See</u> <u>id.</u> at 12.   And that "half" of EchoSpan's employees that live in Florida based on the LinkedIn page appears to include Lance King, who according to Medallia lives in and works from West Palm Beach, Florida.   Response at 4 (citing Ravicher Declaration ¶ 4).   However, West Palm Beach is in the Southern District of Florida, not the Middle District of Florida.   Nevertheless, for purposes of resolving the Motion, the Court will assume that three EchoSpan employees reside in the Middle District of Florida, <u>see</u> Vance Declaration ¶ 12, and that they constitute half of EchoSpan's workforce.

made such a showing the court must accept the facts alleged in the complaint as true, it must do so "only to the extent [the facts] are uncontroverted by defendant's affidavits." Estate of Myhra v. Royal Caribbean Cruises, Ltd., 695 F.3d 1233, 1239 (11th Cir. 2012) (internal quotation marks and alterations omitted), superseded by statute on other grounds as recognized in Caron v. NCL (Bahamas), Ltd., 910 F.3d 1359, 1364 n.2 (11th Cir. 2018). Nevertheless, when faced with conflicting affidavits, in the absence of an evidentiary hearing, the court will "give greater weight to the plaintiff's version of the jurisdictional facts and . . . construe such facts in the light most favorable to the plaintiff." Id. (internal quotation marks omitted). Also, when a court resolves a motion to dismiss based on improper venue without an evidentiary hearing, "the plaintiff must present only a prima facie showing of venue" to survive the motion. Home Ins. Co. v. Thomas Indus., Inc., 896 F.2d 1352, 1355 (11th Cir. 1990) (internal quotation marks omitted). As the Eleventh Circuit Court of Appeals has explained, "Rule 12(b)(3) is a somewhat unique context of dismissal in which [courts] consciously look beyond the mere allegations of the complaint, and, although [courts] continue to favor the plaintiff's facts in the context of any actual evidentiary dispute, [they] do not view the allegations of the complaint as the exclusive basis for decision." Estate of Myhra, 695 F.3d at 1239.

## III.  Discussion

For patent infringement claims, venue is governed by 28 U.S.C. § 1400(b). See TC Heartland LLC v. Kraft Foods Grp. Brands LLC, 581 U.S. 258, 261–62 (2017).   Under this statute, "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."  28 U.S.C. § 1400(b).  Because the purpose of § 1400 and its predecessor was to "define the exact limits of venue in patent infringement suits," the Supreme Court has described it as a "restrictive measure."  In re Cray, Inc., 871 F.3d 1355, 1361 (Fed. Cir. 2017) (quoting Stonite Prods. Co. v. Melvin Lloyd Co., 315 U.S. 561, 566 (1942)).   For this reason, "the Supreme Court has cautioned against a broad reading of the [patent] venue statute."  In re Google LLC, 949 F.3d 1338, 1346–47 (Fed. Cir. 2020) (quoting Stonite Prods. Co. v. Melvin Lloyd Co., 315 U.S. 561, 566 (1942)).

Here, Medallia does not argue that EchoSpan resides in the Middle District of Florida.[4]  Response at 4.   Instead, Medallia contends that EchoSpan has a regular and established place of business in the Middle District of Florida and has committed acts of infringement in this District.  See

---

[4]  For purposes of § 1400(b), the residence of a corporation "refers only to the State of incorporation."  TC Heartland LLC, 581 U.S. at 267–68 (distinguishing patent venue from venue as defined by § 1391).   EchoSpan is incorporated in Georgia.   Vance Declaration ¶ 4.

Complaint ¶ 6.   At least for venue purposes, EchoSpan does not dispute that Medallia has alleged acts of infringement within the Middle District of Florida. Motion at 8 n.2.   But it does dispute the assertion that it has a regular and established place of business in the District.   Accordingly, the Court must determine whether EchoSpan has a "regular and established place of business" within the Middle District of Florida.   See 28 U.S.C. § 1400(b).

"In deciding whether a defendant has a regular and established place of business in a district, no precise rule has been laid down and each case depends on its own facts."   Cray, 871 F.3d at 1362.[5]   The Federal Circuit has identified "three general requirements" for purposes of applying § 1400(b).[6]   See Cray, 871 F.3d at 1360.   First, there must be a "place"—that is, a physical location "from which business is conducted" as opposed to "a virtual space or electronic communications from one person to another."   Id. at 1362.   Second, "the place must be a regular and established place of business," involving business activity with permanence that is not temporary or sporadic.   Id. at 1362–63.   Third, the place of business must be a place "of the defendant, not solely a place of the defendant's employee."   Id. at 1363.   This means that "the defendant must establish or ratify the place of business."   Id.   Notably, the Federal Circuit has

---

[5] Because it is "unique to patent law, . . . Federal Circuit law, rather than regional circuit law, governs" the application of § 1400(b).   Cray, 871 F.3d at 1360.

[6] These three requirements, of course, "do not supplant the statutory language" of § 1400(b).   Cray, 871 F.3d at 1362.

cautioned that courts should "be careful not to conflate showings that may be sufficient for other purposes, <u>e.g.</u>, personal jurisdiction or the general venue statute, with the necessary showing to establish proper venue in patent cases." <u>Id.</u> at 1361.   Indeed, the venue requirement in § 1400(b) is "not one of those vague principles which, in the interest of some overriding policy, is to be given a liberal construction."   <u>Id.</u>; <u>see also</u> <u>In re Google</u>, 949 F.3d at 1347 (quoting <u>Schnell v. Peter Eckrich & Sons, Inc.</u>, 365 U.S. 260, 264 (1961)).

### a. Physical Place in the District

First, EchoSpan asserts that Medallia "has not identified any physical place within this judicial district where EchoSpan allegedly conducts business." Motion at 10.   In general, "it is theoretically possible for an employee's home to serve as the physical location supporting venue" in patent cases.   <u>Univ. of S. Fla. Rsch. Found. v. Agfa HealthCare Corp.</u>, No. 8:16-cv-3106-MSS-TGW, 2017 WL 10276022, at *4 (M.D. Fla. Dec. 29, 2017) (recognizing the possibility but finding the facts before it to be insufficient to warrant such a conclusion because the defendant did not establish or ratify the home as a place of its business)[7]; <u>see also</u> <u>RegenLab USA LLC v. Estar Techs. Ltd.</u>, 335 F. Supp. 3d 526, 552 (S.D.N.Y. 2018) (concluding that the home office of a defendant's employee was

---

[7] The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority.   <u>See</u> <u>Stone v. First Union Corp.</u>, 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects.").

sufficient to support venue).   Indeed, the Federal Circuit has noted that "a small business might operate from a home; if that is a place of business of the defendant, that can be a place of business satisfying the requirement of the statute." Cray, 871 F.3d at 1363.   In support of venue in the Middle District of Florida, Medallia argues that "EchoSpan has a physical presence in this District because it has admitted that half of its work force, including its President, physically reside in the district and work from their homes." Response at 5.   According to Medallia, EchoSpan also has "admitted that [its] 'handful of remote-work employees that reside in Florida' store 'inventory or other property'" in the form of their computers and the data they contain.[8] Id. at 6–7 (citing Vance Declaration ¶ 7).

In support of its contention that the employee home offices are sufficient to constitute a "physical place" in the district, Medallia simply cites general

---

[8] Although Medallia discusses these additional facts after moving on to address "the second and third" requirements of the venue test, see Response at 6–7, in Cray, the Federal Circuit considered storage of "'literature, documents and products'" in analyzing the first venue requirement (in addition to the third).   See Cray, 871 F.3d at 1362 (quoting Cordis, 769 F.2d at 735); see also id. at 1364–65 (analyzing "the third requirement . . . that the regular and established place of business must be 'the place of the defendant,'" and noting the lack of evidence that the defendant "stored inventory or conducted demonstrations" in its employee's home).   As to EchoSpan's ostensible admission that its employees store company property at their homes, this comes from the Vance Declaration, which states that "EchoSpan does not maintain or store any inventory or other property in the state of Florida, other than the personal computers of the handful of remote-work employees that reside in Florida."   Vance Declaration ¶ 7 (emphasis added).   This statement is ambiguous: it could be read as an inartful assertion that the computers are "personal," i.e., the property of the employees (as opposed to EchoSpan).   At this stage of the litigation, however, the Court construes this statement in the light most favorable to Medallia.   See Estate of Myhra, 695 F.3d at 1239.

language from Cray and In re Cordis Corp., 769 F.2d 733, 737 (Fed. Cir. 1985),
without any discussion of the relevant facts or reasoning of either case.   The
Court finds the citation to Cordis to be unavailing.   As noted in Cray,

> In Cordis . . . a defendant used its employees' homes to store its
> "literature, documents and products" and, in some instances, like
> distribution centers, storing inventory that the employees then
> directly took to its clients.  Defendant also engaged a secretarial
> service physically located in the district to perform certain tasks.

Cray, 871 F.3d at 1362 (internal citations omitted).   While those facts in Cordis
were sufficient to show "a physical, geographical location in the district from
which the business of the defendant is carried out," id., they bear little
resemblance to the facts presented here regarding EchoSpan's operations and
its employees' home offices.   Cray, however, may be more helpful to Medallia.
In Cray, the Federal Circuit granted a petition for writ of mandamus and
vacated a district court's order denying a motion to transfer the case to the
proper venue under § 1400.   See Cray, 871 F.3d at 1367.   In doing so, the court
determined that the home offices of a "sales executive" and another employee
did not constitute a "regular and established place of business" of defendant
Cray.   Id. at 1366–67.   Nevertheless, it appears that the court was satisfied
that the home office of the sales executive was "a physical location [in the
district] where an employee of the defendant carrie[d] on certain work for his
employer."   Id. at 1366.   For purposes of resolving the instant Motion, the
Court will assume arguendo that the home offices of the EchoSpan employees

in the Middle District of Florida constitute "a physical, geographical location in the district from which the business of [EchoSpan] is carried out."   Id. at 1362.

### b. Regular and Established

EchoSpan next argues that the employees' homes are not "regular and established" even if they are physical places of business.   See Motion at 11–13. In making this argument, however, EchoSpan simply emphasizes that the employees are free to move into and out of the Middle District of Florida at will. See id. at 12–13 (asserting that the employees "may move freely in and out of the State of Florida" without affecting their employment).   But EchoSpan does not assert that the employees have actually exercised this freedom by moving in and out of the district while conducting business.   Cf. Automated Packaging Sys., Inc. v. Free-Flow Packaging Int'l, Inc., No. 5:14-cv-2022, 2018 WL 400326, at *8 (N.D. Ohio Jan. 12, 2018) (noting that an employee "moved his residence outside of [the] judicial district during his tenure" with the defendant).   And while a place of business must be stable for "a meaningful time period" as part of the "regular and established" requirement, the Federal Circuit has recognized that "a business can certainly move its location."   Cray, 871 F.3d at 1363.   At this stage, the record evidence does not undermine Medallia's assertion that EchoSpan's employees regularly conduct work in their homes. See Complaint ¶ 6; Vance Declaration ¶ 10 (explaining, in a declaration filed by EchoSpan, that the company "instituted a remote work policy" in 2016).

Moreover, it appears that the employees' mere <u>ability</u> to move freely, without more, would not control the analysis of the "regular and established" requirement, but instead would "cut against the employee's home being considered a place of business of the defendant." <u>Cray</u>, 871 F.3d at 1363. On this record, and to the extent that EchoSpan's business is conducted at physical locations in Florida, these locations appear to be regular and established.

### c. Of the Defendant

Assuming that Medallia has shown that the homes of EchoSpan employees are regular and established physical locations in the Middle District of Florida where the business of the company is carried out, the Court must determine whether Medallia satisfies the third requirement—that is, showing that the homes of EchoSpan's employees qualify as places "of the defendant." <u>See</u> <u>Cray</u>, 871 F.3d at 1363. As noted, for an employee's home to constitute a place "<u>of the defendant</u>," "the defendant must establish or ratify" it. <u>Id.</u> In determining whether the employer has ratified an employee's home office as its own place of business, a court can consider various factors such as "whether the defendant owns or leases the place, or exercises other attributes of possession or control," whether the employment is conditioned on an employee's residence in the district, whether the employee stores materials in the district for distribution or sale, and whether the defendant holds itself out as having a place of business in the district. <u>Id.</u> at 1363. Additionally, a court may consider "the

nature and activity of the alleged place of business of the defendant in the district in comparison with that of other places of business of the defendant in other venues." Id. at 1364.

In responding to EchoSpan's Motion, Medallia does not argue that EchoSpan owns or leases the homes of its employees, or that it conditions employment on (or even prefers) residence in the Middle District of Florida. See Response at 8 (acknowledging that "EchoSpan may not have conditioned employment on its employees' continued residence in the District and may not pay any of its employees' rent or mortgage"). Instead, Medallia points to the fact that EchoSpan's Florida employees perform all of their work from their homes in Florida, and store and use company-owned computers at their Florida homes.[9] See Response at 6–7. In making these arguments, Medallia again relies on Cray and Cordis. See id.

As previously noted, the facts in Cordis are readily distinguishable from the facts before the Court in this case. In Cordis, the plaintiff sought to bring a patent infringement claim in Minnesota even though the defendant was a

---

[9] In articulating the test, the Federal Circuit in Cray discussed the storage of "literature, documents and products" as being relevant to the "physical place" requirement, and did not mention its relevance to the "of the defendant" requirement. See Cray, 871 F.3d at 1362. In applying the "of the defendant" requirement, however, the court considered the lack of evidence that the defendant "stored inventory or conducted demonstrations" at its employee's home. See id. at 1364–65. Here, the Court likewise considers the storage of EchoSpan computers in analyzing the "of the defendant" requirement—not just the "physical place" requirement.

Florida corporation.  See Cordis, 769 F.2d at 734.  When the district court found venue to be proper, the defendant petitioned the Federal Circuit for a writ of mandamus requiring the district court to dismiss the case for improper venue.  Id.  The plaintiff responded that venue was proper in Minnesota because the defendant employed two full-time sales representatives within the state to conduct technical demonstrations and consultations.  Id. at 735–36.  After considering the relevant facts, the Federal Circuit concluded that mandamus was not warranted.[10]  See id. at 737.  In reaching this conclusion, the court noted that the sales representatives collectively stored approximately $90,000 worth of the defendant's merchandise in their home offices.  Id. at 735.  The defendant also engaged a Minnesota secretarial service to send and receive mail on its behalf, printed business cards directing telephone traffic to this local service in the state, and provided—through the two sales representatives— local, in-person presentations and technical consultations.  See id.

Here, Medallia has not shown that EchoSpan stores any merchandise at its employees' homes.  See Vance Declaration ¶ 7.  Nor has it presented evidence suggesting that EchoSpan employs local representatives to send and

---

[10] The Federal Circuit noted, however, that mandamus can be inappropriate even when, "on normal appeal, a court might find reversible error."  Cordis, 769 F.2d at 737.  Although Cordis provides helpful analysis of § 1400(b), the court merely held that there was a "rational and substantial legal argument" to support the court's order, and thus that the defendant had "not demonstrated that the district court's conclusion . . . constitute[d] an abuse of discretion" sufficient to justify a writ of mandamus.  Id.  It did not expressly hold that the venue determination was legally correct.

receive mail in Florida, or that employees have business relationships with or provide in-person support for clients in the Middle District of Florida.   See Vance Declaration ¶¶ 13, 15.[11]   Indeed, Medallia presents no evidence that the presence of the employees in the Middle District of Florida matters to EchoSpan at all.[12]   And Vance attests that the presence of EchoSpan employees in Florida is not only immaterial to EchoSpan's customers, it "is immaterial to EchoSpan" itself.   See id. ¶ 13.

The facts before the Court here are far more similar to those in Cray than Cordis.   In Cray, the Federal Circuit found that the facts presented could not support a finding that the Cray employees' homes in Texas were a "place of business of Cray."   Cray, 871 F.3d at 1364–66 (emphasis omitted).   Although Cray allowed employees including a sales executive to work from the Eastern District of Texas, it

_____

[11] Although EchoSpan's employees conduct "virtual demonstrations" from their home offices "for audiences located elsewhere," there is no indication that these audiences are located in the Middle District of Florida.   See id. ¶¶ 13, 15 (representing that the physical location of EchoSpan employees "is immaterial to EchoSpan and EchoSpan customers"); Ravicher Declaration at 5 (displaying an EchoSpan job posting which states that "EchoSpan is a 100% virtual organization, so all work will be done from home with the expectation of quarterly travel to Atlanta for company meetings"); cf. RegenLab, 335 F. Supp. 3d at 550–51 (concluding that the homes of New York employees constituted an established place of the defendant's business, despite there being no requirement that employees live in the state, because the defendant sought to hire employees living in the state, and required employees to develop customer relationships within the state and work in "proximity to customers" there).

[12] Medallia argues that "having employees in Florida is not random, nor is it unintentional.   EchoSpan made the conscious decision to have employees in Florida for its own benefit."   Response at 4.   However, it points to no facts in support of the idea that EchoSpan wanted the employees to be in Florida for its benefit.   To the contrary, the evidence shows only that EchoSpan found it beneficial to allow employees to work remotely from the location of their choice—not necessarily in Florida.

- did not own, lease, or rent any portion of the employees' homes,

- did not have any role in selecting their locations,

- did not store inventory there, and

- did not condition employment on the employees remaining in the Eastern District of Texas.

Id. at 1365.   Although Cray had customers in Texas, there was no suggestion that Texas-based employees served those customers.   Id.   The court explained:

> For purposes of § 1400(b), it is of no moment that an employee may permanently reside at a place or intend to conduct his or her business from that place for present and future employers. "The statute clearly requires that venue be laid where 'the defendant has a regular and established place of business,' not where the defendant's employee owns a home in which he carries on some of the work that he does for the defendant."

Id., (quoting Am. Cyanamid Co. v. Nopco Chem. Co., 388 F.2d 818, 820 (4th Cir. 1968)).

In declining to find that the facts presented supported venue in Texas, the court explained how the facts in Cray stood in contrast to those in Cordis. In addition to the fact that Cordis advertised a secretarial service office in the district as a place of business of its own and used the employees' homes as distribution centers, the court noted that "Cordis's business specifically depended on employees being physically present at places in the district."   Id. The court also noted "that Cordis affirmatively acted to make permanent

operations" to serve its customers in the district.   Id.   Unlike in Cordis, however, the Cray employees were "'free to live where [they] chose as far as [the defendant] was concerned.'"   Id. (citing Grantham v. Challenge-Cook Bros., Inc., 420 F.2d 1182, 1185 (7th Cir. 1969)) (alterations in original)).

Here, as in Cray, EchoSpan's employees are free to live wherever they choose and nothing about EchoSpan's operations in the Middle District of Florida requires or depends on a presence here.   While EchoSpan may benefit from its employees being happy to live in Florida, that is insufficient to support a conclusion that EchoSpan has ratified the employees' homes as places of business of its own.   See id.; see also Celgene Corp. v. Mylan Pharms. Inc., 17 F.4th 1111, 1124 (Fed. Cir. 2021) (finding venue improper in New Jersey, despite the defendants' employees' decision to store product samples in lockers within the state, because there was "no evidence that [either defendant] require[d] its employees to store materials anywhere in New Jersey or that renting lockers in New Jersey was anything but the employees' choice"); Bel Power Sols. Inc. v. Monolithic Power Sys., Inc., No. 6:21-cv-655-ADA, 2022 WL 2161056, at *3 (W.D. Tex. June 15, 2022) (explaining RegenLab's finding of venue by noting that "the employees did not merely possess" the locally stored materials, as "their use in the challenged venue was part of each employee's job description" (emphasis added)).

Medallia's argument that "EchoSpan proudly represents to the public and its customers" that half of its workforce is located in Florida does nothing to strengthen its assertion of venue.[13]   <u>See</u> Response at 7.   In support, Medallia submits an article from EchoSpan's website entitled "EchoSpan and COVID-19."   <u>See</u> Ravicher Declaration at 12.   This article, published on March 2, 2020, addressed client questions about EchoSpan's readiness for an emergency like the COVID-19 pandemic.   <u>See</u> <u>id.</u>   In addition to describing EchoSpan's technological redundancy, financial stability, and internal review of its planned speaking events, the article noted that the company is "also geographically dispersed; half of EchoSpan's employees are in the Atlanta area and half are in Florida."   <u>Id.</u>   It is true that "a defendant's representations that it has a place of business in the district are relevant to the inquiry."   <u>Cray</u>, 871 F.3d at 1363. However, nothing in the article suggests that EchoSpan operates a place of business in Florida.   <u>See</u> <u>Cray</u>, 871 F.3d at 1365–66 (noting that social media profiles showing the employee to be in Texas "indicate[d] at most that he conducted business from the Eastern District of Texas, not that Cray established a place of business there.").   Moreover, a representation that an

---

[13] This precise number or proportion of employees in Florida (as opposed to other states) does not affect the result here.   Although the Federal Circuit has not decided the issue, it has expressed skepticism of the "aggregate-place theory—one in which [the Court] would 'assess[ ] venue on a district-by-district rather than address-by-address basis.'"   <u>See</u> <u>Celgene</u>, 17 F.4th at 1125 (noting that the plaintiff pointed "to no case endorsing" this theory). Regardless, the Court is "unconvinced that the homes" of EchoSpan's three employees, even if analyzed collectively, "would be 'of the defendant' under the facts of this case."   <u>See</u> <u>id.</u>

employee "conducted business from" a certain state is not necessarily a representation that the defendant "established a place of business in the state." C.R. Bard, Inc. v. Smiths Med. ASD, Inc., No. 2:12-cv-36, 2020 WL 6710425, at *12 (D. Utah Nov. 16, 2020) (holding that a defendant did not represent Utah as an established place of business by printing business cards with Utah cell phone numbers because this indicated "[a]t most" that employees "conducted business from Utah" when the numbers were issued); see also Zaxcom, Inc. v. Lectrosonics, Inc., No. 17-CV-3408, 2019 WL 418860, at *6 (E.D.N.Y. Feb. 1, 2019) (finding that passing references to an employee's home as "our NY office" were insufficient to demonstrate that the defendant "held out the physical space . . . as a place of its business" where the defendant did not target the New York market).   Notably, in 2021 the Federal Circuit found evidence of employee business cards and LinkedIn profiles that listed New Jersey addresses to be "too speculative" to support venue in New Jersey.   Celgene, 17 F.4th at 1123.   And here, because EchoSpan's article is about the company's resistance to disruption by COVID-19, it is even harder to view the reference to Florida as a representation that EchoSpan has "established a place of business in the state." The article stresses the company's geographic dispersion, flexibility, lack of "regular face-to-face contact," and ability to ensure that the "business runs smoothly without the need for a common office space."   Ravicher Declaration at 12.   If anything, these statements suggest that the employees' specific

presence in Florida is <u>not</u> important to EchoSpan's business.   And the Federal Circuit has noted that "if an employee can move his or her home out of the district at his or her own instigation, without the approval of the defendant, that would cut against the employee's home being considered a place of business of the defendant." <u>Cray</u>, 871 F.3d at 1363.   These facts thus reenforce the Court's conclusion that EchoSpan has not ratified the homes of its Florida employees as offices of its own.

Medallia points out that the Court can compare the business activity at the employees' homes with "that of the other places of business of the defendant in other venues."   Response at 8 (quoting <u>Cray</u>, 871 F.3d at 1364 & n.*).   In this regard, the Federal Circuit has observed that such a comparison "may reveal, for example, that a defendant has a business model whereby many employees' homes are used by the business as a place of business of the defendant." <u>Cray</u>, 871 F.3d at 1364 n.*.   In arguing for the applicability of this principle, Medallia cites <u>RegenLab</u>, 335 F. Supp. 3d at 549.   <u>See</u> Response at 9.   The <u>RegenLab</u> court found it significant that all of the defendant's employees worked from home, concluding that "home offices constitute a primary physical location for [the defendant's] business."[14]   <u>RegenLab</u>, 335 F.

---

[14] Relatedly, Medallia argues that EchoSpan's remote-work "arrangement benefits the company" and was made to accommodate its employees' preferences, and thus asserts that "EchoSpan made the conscious decision to have employees in Florida for its own benefit." Response at 3–4.   In making this contention, Medallia appears to suggest that its argument for venue is strengthened by the collective benefit it receives by allowing multiple employees

Supp. 3d at 549.   But this was part of the court's consideration of the "physical place" requirement, not the "of the defendant" requirement.   <u>See</u> <u>id.</u>   While the court concluded the employee home offices were a physical place, it ultimately determined that they were not a place "of the defendant" in part because the employees' work within the state was part of each employee's job—not simply because the defendant had a virtual business model.   <u>See</u> <u>RegenLab</u>, 335 F. Supp. 3d at 552 (stressing that the "employees did not merely possess [sales kits]—their use in New York was part of each employee's job description"); <u>see also</u> <u>Mayborn (UK) Ltd. v. Comotomo Inc.</u>, No. 22 Civ. 694, 2023 WL 22616, at *6 (S.D.N.Y. Jan. 3, 2023) (rejecting plaintiffs' reliance on <u>RegenLab</u> where the employer had no deliberate connection to the state); <u>Cray</u>, 871 F.3d at 1366 (finding that an employee's use of online materials at his home was "not compelling" because online availability would also support venue "in places where no one would argue that [the defendant] established a regular place of business"); <u>C.R. Bard</u>, 2020 WL 6710425, at *13 (noting that "[a]rguments that home offices amount to established places of business for corporate defendants are far less persuasive" in the post-COVID-19 world because they can more

---

to work in Florida.   <u>See</u> <u>id.</u> at 8 ("In the context of the venue inquiry these facts should be viewed in light of Defendant's decision to save significant costs and retain its employees by honoring their preference for working from home.").   But Medallia cites no authority to suggest that the benefits of a virtual business model affect whether the defendant ratified a place of business.   At least in this case, such a theory would seem to paradoxically turn EchoSpan's choice <u>not</u> to ratify a place of business into prima facie evidence of ratification.

easily "render the 'regular and established place of business' prong of § 1400(b) all but meaningless").   To the extent that EchoSpan's business model may be relevant to the "of the defendant" requirement, it is not dispositive.   See Cray, 871 F.3d at 1366 (holding that "no one fact is controlling" in the venue analysis). Notably, Medallia provides no authority for the proposition that a virtual business model—standing alone—is sufficient to convert the homes of employees into places "of the defendant."   Indeed, in Cray the Federal Circuit recognized that due to technological advances, "[b]usiness can [now] be conducted virtually."   Cray, 871 F.3d at 1359.   Nevertheless, the court re-affirmed that "the focus of venue in patent cases" must remain "on the full and unchanged language of [§ 1400(b)]."   Id.   And that language requires that the defendant have a regular and established place of business in the district.   28 U.S.C. § 1400(b).

Moreover, a comparison between the homes of EchoSpan's Florida employees and the home office of EchoSpan's CEO in the Northern District of Georgia only weakens Medallia's argument.   Unlike the Florida homes of EchoSpan's employees, the CEO's Georgia home office is publicly represented to be a place of business of the Defendant, and EchoSpan requires employees to attend regular meetings in that district.   See Response at 4 (asserting that "EchoSpan's registered office is merely its CEO's home"); Ravicher Declaration at 5 (explaining, in an EchoSpan job posting, the "expectation of quarterly travel

to Atlanta for company meetings").   This comparison does nothing to support Medallia's contention that the Florida employees' homes are actually places of business of Defendant EchoSpan.

Here, as in <u>Cray</u>, the facts "do not show that [EchoSpan] maintains a regular and established place of business in the [Middle District of Florida]; they merely show that there exists within the district a physical location where an employee of the defendant carries on certain work for his employer."   <u>Id.</u> at 1366.   Examining the totality of the record and construing the facts in the light most favorable to Medallia, the evidence and pleadings are simply insufficient to support a conclusion that EchoSpan has a regular and established place of business in the Middle District of Florida.   Accordingly, venue is improper in this District.[15]   <u>See</u> § 1400(b).

---

[15] To the extent that Medallia seeks leave to amend its Complaint "to add in more allegations to support venue," <u>see</u> Response at 11, this request is unavailing for at least three reasons.   First, a request for affirmative relief, such as a request for leave to amend a pleading, is not properly made when simply included in a response to a motion.   <u>See</u> Fed. R. Civ. P. 7(b); <u>see also</u> <u>Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty., Fla.</u>, 48 F.4th 1222, 1236 (11th Cir. 2022) ("[W]here a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly." (quoting <u>Newton v. Duke Energy Fla., LLC</u>, 895 F.3d 1270, 1277 (11th Cir. 2018))); <u>Rosenberg v. Gould</u>, 554 F.3d 962, 965 (11th Cir. 2009).   Second, even if it were proper to include this request in the Response, the request fails to satisfy the requirement that "[a] motion for leave to amend should either set forth the substance of the proposed amendment or attach a copy of the proposed amendment."   <u>Long v. Satz</u>, 181 F.3d 1275, 1279 (11th Cir. 1999); <u>see also</u> <u>McGinley v. Fla. Dep't of Highway Safety and Motor Vehicles</u>, 438 F. App'x 754, 757 (11th Cir. 2011) (affirming denial of leave to amend where plaintiff did not set forth the substance of the proposed amendment); <u>United States ex. rel. Atkins v. McInteer</u>, 470 F. 3d 1350, 1361–62 (11th Cir. 2006) (same).   Last, even if the request was properly raised, the Response already provided Medallia an opportunity to present any additional evidence that it thought was necessary to establish venue, and the Court has considered that evidence in addition to the allegations of the Complaint in ruling on the Motion.

### d. Transfer of Venue

Having determined that venue is improper in the Middle District of Florida, the Court must decide whether to transfer the case pursuant to 28 U.S.C. § 1406(a).[16]   With regard to an action filed in an improper venue, § 1406(a) provides, "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."   Thus, § 1406(a) commits to the district court's discretion the decision of whether to dismiss a case where venue is lacking or transfer it to a proper venue.   Heinisch v. Bernardini, No. 1:14-cv-41(WLS), 2014 WL 4976215, at *3 (M.D. Ga. Oct. 3, 2014).   The interests of justice, of course, "generally favor transferring a case to the appropriate judicial district rather than dismissing it."   Hemispherx Biopharma Inc. v. MidSouth Capital, Inc., 669 F. Supp. 2d 1353, 1359 (S.D. Fla. 2009); see also Heinisch, 2014 WL 4976215, at *3 (recognizing a presumption in favor of transfer); Ferris v. Rollins College Inc., No. 1:08-cv-00039-SPM-AK, 2008 WL 4569872, at *5 (N.D. Fla. Oct. 9, 2008) (recognizing preference for transfer over dismissal).

---

[16] In opposing transfer of venue, Medallia cites the standard for transfer under § 1404(a).   See Response at 12.   However, that provision applies when venue is not wrong or improper.   See Atlantic Marine Const. Co., Inc. v. U.S. Dist. Ct. for the W. Dist. Tx., 571 U.S. 49, 59 (2013) (distinguishing § 1404 from § 1406).   Because venue is improper here, the Court does not address Medallia's argument that transfer would not serve "the convenience of the parties and witnesses."   See Response at 12 (quoting § 1404(a)).

In the Motion, EchoSpan seeks dismissal or, in the alternative, a transfer to the United States District Court for the Northern District of Georgia. Significantly, the parties agree that the case could have been brought in that district.  See Motion at 19 ("Accordingly, this case could have been brought in the Northern District of Georgia"); Response at 12 ("Medallia does not dispute that this case could have been filed in the Northern District of Georgia.").   And the parties do not identify any alternative district where venue would be suitable.   On this record, the Court is of the view that the interests of justice weigh in favor of transfer rather than dismissal.   Accordingly, the Court will exercise its discretion to transfer the case to the Northern District of Georgia.

## IV.   Conclusion

For the foregoing reasons, the Court finds that venue is improper.   In the interest of justice, the Court will transfer the case to the Northern District of Georgia.   To this extent, EchoSpan's Motion is due to be granted.

Accordingly, it is

**ORDERED:**

1.   Defendant EchoSpan, Inc.'s Motion to Dismiss for Improper Venue or, in the Alternative, Transfer to the United States District Court for the Northern District of Georgia (Doc. 10) is **GRANTED in part and DENIED in part**.

      a. The Motion is granted to the extent that the Clerk of the Court is **DIRECTED** to transfer this action to the United States District Court for the Northern District of Georgia.

      b. In all other respects, the Motion is **DENIED**.

2.    The Clerk of the Court is further directed to terminate all pending motions and close the file.

    **DONE AND ORDERED** in Jacksonville, Florida this 21st day of August, 2023.

**MARCIA MORALES HOWARD**
United States District Judge

lc31

Copies to:

Counsel of Record